# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PEAK SERUM, INC. | ) | Case No. 19-19802 JGR |
| EIN: 47-2816472 | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| IN RE: | ) | Case No. 19-19803 JGR |
| | ) | |
| THOMAS KUTRUBES | ) | Chapter 11 |
| SSN: XX-XXX-5948 | ) | |
| | ) | (Jointly Administered) |
| Debtor. | ) | |

## OBJECTION OF ATLAS BIOLOGICALS, LLC TO DEBTOR'S MOTION TO APPROVE CASH COLLATERAL AGREEMENT WITH FIRST NATIONAL BANK OF OMAHA

Atlas Biologicals, Inc., ("***Atlas***") judgment creditor of the above-captioned debtors and debtors-in-possession, hereby files its Objection to the Debtor's *Motion To Approve Cash Collateral Agreement with First National Bank of Omaha* [Docket No. 63] ("***Cash Collateral Motion***"), and respectfully states as follows:

### I. BACKGROUND

1. Debtor Peak Serum, Inc. ("***Peak***") and its principal, Debtor Thomas John Kutrubes ("***Kutrubes***") (together, the "***Debtors***") both filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("***Case***") on November 13, 2019 ("***Petition Date***"), and they remain debtors-in-possession.

2. Atlas is a judgment creditor of both Peak and Kutrubes. Judgment was awarded in favor of Atlas and against Peak and Kutrubes (jointly and severally) in United States District Court for the District of Colorado in Case No. 15-cv-00355-CMA-KMT ("***Suit***") on September 23, 2019,

in the amount of $2,048,180.50 ("***Judgment***").  The Judgment was issued based upon Atlas's claims against Kutrubes and Peak for federal trademark infringement; Colorado common law trademark and trade name infringement; misappropriation of trade secrets; and breach of fiduciary duty.

3.  Atlas's Judgment constitutes the sole reason why each of the above-captioned Debtors is seeking protection and relief under chapter 11.

4.  In the 56 page opinion issued in the Suit, Judge Christine Arguello made several specific Findings of Fact and Conclusions of Law regarding Kutrubes and his company Peak, and their respective lack of veracity and wrongful actions (undertaken through Kutrubes) ("***Opinion***"), some of which are recited as follows:

- Peak Serum is wholly owned by Kutrubes and in 2014, "[U]nbeknownst to Atlas, Kutrubes was developing a business plan to compete with Atlas while he was still in Atlas's employ." (Opinion, p.4).

- Kutrubes "took certain information, documentation, and data" from Atlas by emailing documents from his Atlas-provided email account to his personal Gmail account.  These documents included Atlas's customer contact lists, a supplier agreement; its quality manual; its organizational chart; a contract manufacturing statement; proofs of labels; a marketing brochure; and email exchanges about Atlas's products, among others" (Opinion, pp..4-5).
5.

- Kutrubes also "sent certain emails to customers of [Atlas]" that contained Atlas's trademarks and trade names and "solicited business for his company, Peak Serum." (Opinion, p.5).

- "In these emails, Kutrubes falsely represented to Atlas's customers that Atlas and Peak Serum were 'sister companies,' that Atlas was no longer conducting international business, and that Peak Serum would be assuming Atlas's international customers." (Emphasis added). (Opinion, p.5).

- Kutrubes "admits he breached his duty of loyalty as an employee [of Atlas] between October 1, 2014, and continuing until his termination in December of 2014." (emphasis added) (Opinion, p.10).

2

- Judge Arguello found that "Kutrubes' intent in using Atlas's trademarks and trade names in these promotional emails was to benefit himself and his nascent business, Peak Serum. By feeding Atlas's customers and prospective customers untruths about Atlas's product offerings, such as that Atlas was no longer supplying fetal bovine serum, Kutrubes sought to drive business away from Atlas and towards Peak Serum. That he was doing so in emails he signed as Atlas's National Sales Manager and sent from an Atlas-provided account only reinforces this finding. The Court does not find Kutrubes's self-serving testimony that he did not intend to confuse consumers and that he was also promoting Atlas's products in these emails to be sincere." (internal citations omitted)(emphasis added) (Opinion, p.17).

- Kutrubes had an intent to cause confusion among Atlas's customers. "He purposefully used the reputation of Atlas and the goodwill associated with the company to funnel business from Atlas and to Peak Serum." (Opinion, pp.18-19).

- That "Kutrubes and Peak Serum had engaged in deception which was likely to cause confusion among the consuming public." (emphasis added) (Opinion, p .27).

- Judge Arguello concluded "that this is an exceptional case that warrants an award of attorneys' fees to Atlas. The evidence shows that Kutrubes and Peak Serum deliberately used Atlas's marks and names to drive customers away from Atlas's products and to solicit business for Peak Serum, just as they deliberately made false representations to Atlas's customers and prospective customers." (emphasis added) (Opinion, p.32).

- "In light of the evidence presented, including Kutrubes's concession that he had the development of Peak Serum in mind when he emailed Atlas's customer information to his personal account, the Court finds that Kutrubes's and Peak Serum's misappropriation of the information in Atlas's customer database was attended by circumstances of willful and wanton disregard of Atlas's rights." (emphasis added) (Opinion, p.37).

- Judge Arguello concluded that "Kutrubes plainly was not acting in good faith." (emphasis added) (Opinion, p.51).

## II. **OBJECTION**

6. On December 23, 2019, the Debtors filed their Motion, seeking approval of a Stipulated Cash Collateral Agreement with First National Bank of Omaha ("**FNB**"). As detailed below, Atlas objects to the terms of the Stipulation as being unreasonable and, as to Kutrubes, unnecessary.

7. At the Debtors' combined 11 U.S.C. § 341 Meeting of Creditors, conducted on December 19, 2019, Kutrubes was unable to recall or discuss any details pertaining to his financial

relationship with FNB, and the reliability of the financial performance of the Debtors as outlined in the two prior budgets Peak has filed in its Case. Kutrubes' did state those two budgets were not reliable.

8. In the Motion and attached Cash Collateral Agreement, the Debtors and FNB summarily state that the "Borrower's indebtedness owing to the Lender is evidenced by the loan documents described attached hereto as Exhibit A." (Agreement, ¶8(a)). However, those loan documents are confusing, and the Debtors fail to actually explain the loan chronology vis-à-vis FNB. For example, it appears that Peak entered into a Loan Agreement with FNB whereby it borrowed the sum of $250,000 from FNB on or about March 26, 2018 ("**FNB Loan**"). Without explanation in the Motion or Agreement, the FNB Loan apparently increased to at least $300,000.00 in August, 2018, and that increase in the FNB loan amount appears to have been documented on April 2, 2019 via a "Change in Terms Agreement".

9. . The Agreement contains admissions regarding the validity and enforceability of the FNB Loan and waivers of the respective Debtors' challenge rights to those Loan documents. Exhibit A to the Motion does not reflect that Kutrubes, as guarantor of the FNB Loan, agreed to the Change in Terms by executing any documents reaffirming the validity of his prior guaranty, in either August of 2018 or in March of 2019. As a result, issues exist as to whether Kutrubes' guaranty of the FNB Loan to Peak remains valid. Yet, the Agreement contains immediate waivers of both Debtors' rights to challenge the validity of the FNB Loan documents and enforceability of same with respect to Kutrubes. Absent further proof that Kutrubes' executed documents reaffirming his guaranty of Peaks' original indebtedness to FNB, the Agreement should not be approved in its current form, as it waives valuable rights to challenge the enforceability of such

guaranty, and it does not appear that the Debtors have investigated any ability to avoid liability under the FNB Loan.

10. Further, as to Kutrubes personally, it does not appear that he has any interest in cash collateral, as the Agreement does not affect or govern the manner by which Kutrubes spends the income he receives from Peak. Atlas asserts Kutrubes should not be a party to the Agreement.

11. Pre-petition, the FNB Loan documents reflect that Peak was required to make monthly interest-only payments. Peak's response to Part 2, Question 3 on its Statement of Financial Affairs indicates that in the five (5) months prior to its Case fling, Peak paid FNB a total of $7,000.00 (from July, 2019 through November 13, 2019), meaning it made monthly payments to FNB in the average amount of $1,400.00.

12. In the Agreement, the Debtors and FNB agree that FNB is an oversecured creditor (See Agreement, ¶8(f)). Despite this admission and the historical amount of monthly pre-petition payments which were made by Peak to FNB, the Agreement requires Peak to make monthly $7,500 adequate protection payments in favor of FNB, an escalation of $6,100.00 over what was required to be paid by Peak to FNB pre-petition.

13. There is no explanation as to why FNB should receive such large adequate protection payments. Atlas submits that as an oversecured creditor, FNB is not entitled to receive any adequate protection payments, let alone an increase from pre-petition payments in excess of 450% over what was being paid pre-petition. See, In re Gallegos Research Group, Corp., 193 B.R. 577 (Bankr. D. Colo. 1997).

14. Although the Agreement contains a default provision, there is no description as to what would constitute a default under its terms. For example, there is no requirement that Peak operate within the confines (and not vary from) the contemplated Budget, or what consequences

would result from Peak's negative variance from that Budget. The Agreement should be clarified so that all interested parties are aware of what activities could trigger an event of default under the Agreement.

15. Peak has attached a "Pro-Forma 6 Month Budget to the Agreement ("***Budget***"). The Budget is barely legible, as has been true since the Debtors commenced these Cases. This is Kutrubes' third attempt at formulating the same Budget for Peak since he caused it to file its Case less than two months ago. As the Court is aware, Kutrubes testified at the December, 2019 Interim Cash Collateral Hearing that the prior budgets he submitted were unreliable, that Peak was not operating within their confines, that the budget then at issue was completed on an accrual, rather than a cash basis, and that the terms of the budget (in December, 2019) were not being met.

16. In the Motion, the Debtors fail to reference any of these facts, nor does it offer any details about the Budget and its reliability. It appears to suffer from many of the same infirmities contained in the prior budget iterations. There is no provision in the Budget for payment of United States Trustee fees, no provision for potential "burial expenses" in the event the case is converted to Chapter 7, there exists a blanket wavier of surcharge rights, and line item entries for many expense categories simply repeat the same amounts on a weekly/monthly basis with no analysis of the effect of these Chapter 11 Cases on Peak's business.

17. The Agreement also requires the Debtors to provide various monthly financial reports (other than the Debtors' required Monthly Operating Reports) to FNB. The first round of such reports were due and apparently provided to FNB contemporaneously upon execution of the Agreement in December, 2019. Atlas has requested, but has not yet received, copies of those reports (and all subsequent monthly reporting due to FNB under the Agreement) so that it too possesses the information necessary to analyze the Debtors' post-petition operations and financial

conditions. Thus, Atlas cannot gauge the Debtor's post-petition operating performance, cannot determine if the Debtors are in compliance with the terms of the Agreement, and cannot determine whether Peak can continue to operate and remain administratively solvent relying solely on use of cash collateral.

18. Prior to the Final Hearing on use of Cash Collateral scheduled for January 21, 2020, Peak should be required to submit a variance report reflecting any deviation from the Budget which has occurred on a weekly basis, through and including January 15, 2020.

19. Atlas has propounded discovery to the Debtors in conjunction with the Cash Collateral Motion, in an attempt to verify and receive an explanation of the items set forth in the Budget and the Agreement. Atlas reserves its rights to supplement this Objection based upon any information contained in the reports (not yet provided), and with respect to any information obtained in response to those pending Discovery Requests.

WHEREFORE, Atlas Biologicals, Inc. requests that the Court enter an Order denying approval of the Cash Collateral Stipulation, and for any such other and further relief as this Court deems just and proper under the circumstances.

Dated: January 6, 2020      Respectfully submitted,

**SPENCER FANE LLP**

By: */s/ David M. Miller*
David M. Miller, #17915
1700 Lincoln St., Suite 2000
Denver, CO 80203
Ph. (303) 839-3800
Fax (303) 839-3838
e-mail: dmiller@spencerfane.com

*Counsel for Atlas Biologicals, Inc.*

## CERTIFICATE OF SERVICE

       The undersigned certifies that on January 6, 2020, a copy of the foregoing on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and the L.B.R. at the following addresses:

US Trustee
Attn: Alison Goldenberg
Byron G. Rogers Federal Bldg.
1961 Stout St., Ste. 12-200
Denver, CO 80294-1961

Peak Serum, Inc.
6598 Buttercup Dr., Unit 3
Wellington, CO 80549

Thomas Kutrubes
3602 Voyager Lane
Fort Collins, CO 80528

Aaron Garber
2580 W. Main St., Ste. 200
Littleton, CO 80120

Michael C. Payne
5586 W. 19th St., Ste. 2000
Greeley, CO 80634

 

/s Nancy Schacht_____
Nancy Schacht