UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-19802-JGR |
| PEAK SERUM, INC. ) | |
| EIN: 47-2816472 ) | Chapter 11 |
| ) | JOINTLY ADMINISTERED |
| Debtor. ) | |
| ) | |
| IN RE: ) | |
| ) | Case No. 19-19803-JGR |
| THOMAS KUTRUBES ) | |
| SSN: XXX-XX-5948 ) | |
| ) | |
| Debtor. ) | |

## MOTION TO CONVERT CASES TO SUB-CHAPTER V CASES OR IN THE ALTERNATIVE TO ALLOW DISMISSAL AND REFILING OF CASES

The Debtors, Peak Serum, Inc. ("Peak") and Thomas Kutrubes ("Mr. Kutrubes," collectively referred to as the "Debtors"), by and through their attorneys, Wadsworth Garber Warner Conrardy, P.C., for their Motion to Convert Cases to Sub-Chapter V Cases or in the Alternative to Allow Dismissal and Refiling of Cases respectfully state as follows:

### INTRODUCTION

1. Both Peak and Mr. Kutrubes filed separate Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code on November 13, 2019 (the "Petition Date") and remain debtors-in-possession.

2. Peak is a privately owned and independent supplier of life science laboratory products. The core focus is Fetal Bovine Serum for clinical trial and research and diagnostics applications. Peak offers a wide range of high quality, 100% U.S. origin and USDA origin Fetal Bovine Serum for research purposes. Peak is located in Wellington, Colorado.

3. Mr. Kutrubes is the owner and president of Peak.

4. The filing was prompted by an approximate $2,000,000 judgment obtained by Atlas Biologicals, Inc. ('Atlas'). The judgment held by Atlas is currently being appealed. The judgment arises from a business dispute between the Debtors and Atlas.

5. Atlas is also a competitor of the Peak.

6. It is apparent that Atlas is out to punish Mr. Kutrubes and put Peak out of business. Atlas is also seeking to litigate the Debtors to death through mere allegation without investigate of facts. This is evidenced by the following:

   a. For example, Atlas' representative, Rick Paniccia, after entry of the judgment contacted and made accusations and threats to the committee that appoints individuals who are selected to the Norther Colorado Top 40 under 40. Atlas was demanding that Mr. Kutrubes be stripped of his award of 40 under 40 based upon the judgment.

   b. In December of 2019, Peak was informed by CSU that articles about Peak, its bankruptcy and the judgment were posted at CSU over and couple of days. CSU removed the articles, but not before employees of the labs at CSU saw the articles.

   c. Shortly after having obtained relief from stay to proceed with a variety of litigation, Atlas sought appoint of a Trustee would put the Trustee in charge of these litigations and remove the Debtors from directly controlling and prosecuting of defending these litigations as the case may be.

   d. On January 21, 2020, Atlas, in the Kutrubes bankruptcy case filed its Objection to exemption in the Debtor's ERISA based retirement plans. As with the Trustee Motion, the objection was based upon conjecture and misleading statements rather than actual fact.

   e. Atlas have evidenced that it is fully aware of how to and is willing to use discovery to answer its questions. Atlas has propounded extension Rule 2004 discovery upon numerous parties. Atlas has propounded upon the Debtors informal extensive document demands. Yet, for example, Atlas has failed to utilize any of these methods when it comes to key issues in these cases, including the Objection to the ERISA based exemption and the Motion to appoint a trustee. Rather, Atlas, seeks to use these Court documents to try to create bias by the Court against the Debtors, to cause the Debtors to incur extensive legal fees, and to try to disrupt and create leverage in its litigation with the Debtors.

7. The Small Business Reorganization Act of 2019 went into effect of February 19, 2020, adding Sub-Chapter V to Chapter 11 of the Bankruptcy Code.

8. To qualify for a filing under Sub-Chapter V, the small business debt limit was $2,725,625.

9. On the Petition Date, the debt of Peak totaled $3,558,488.67.

10. On the Petition Date, the debt of Kutrubes was $3,328,918.67.

11. On or around March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

12. Under the CARES Act the debt limit to qualify for Sub-Chapter V was reset to $7,500,000 to save small business and jobs as a result of the COVID-19 pandemic.

13. Both Peak and Kutrubes are small business cases and a result of the CARES Act now qualify to proceed under Sub-Chapter V of the Bankruptcy Code.

14. The CARES Act provides that the increased debt limit applies only to cases filed after its enactment.

## RELIEF REQUESTED AND BASIS THEREFORE

15. The Debtors are requesting authority to convert these cases to Sub-Chapter V cases or in the alternative to be permitted to dismiss the cases as refile as Sub-Chapter V cases.

16. There are numerous benefits to proceeding under Sub-Chapter V for the Debtors and the estates.

17. The bankruptcy process will become more streamlined, saving the Debtor and the estates significant expense. Also, a costly confirmation battle with Atlas will be avoided or the confirmation issues will be substantially narrowed given the limited confirmation requirements under Sub-Chapter V.

18. Atlas has also requested the appointment of a trustee. While the Debtor vehemently disputes the need for a trustee, under Sub-Chapter V a trustee will be appoint; albeit, the trustee's duties are limited. Yet the Trustee plays a role in oversight and resolution of the case.

19. The legislative history for Sub-Chapter explained its purpose is:

Notwithstanding the 2005 Amendments, small business chapter 11 cases continue to encounter difficulty in successfully reorganizing. Based upon their respective reviews of this issue, the NBC and the ABI developed recommendations to improve the reorganization process for small business chapter 11 debtors. H.R. 3311 is

largely derived from these recommendations. As the bill's sponsor, Representative Ben Cline (R-VA), explained at the hearing held by the Subcommittee on Antitrust, Commercial, and Administrative Law on June 25, 2019 at which H.R. 3311 was considered, the legislation allows these debtors ``to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business" which ``not only benefits the owners, but employees, suppliers, customers, and others who rely on that business.'

Report from the House Committee on the Judiciary (Report No. 116-54.)

20. The CARES Act is designed to save small businesses, jobs and tax dollars during this difficult time.

21. The CARES Act was designed, among other things, to save small businesses such as Peak.

22. The Debtors assert allowing the cases to be converted to Sub-Chapter V is the most efficient means of proceeding. It avoids a second filing, a second meeting of creditors, a second request of use of cash collateral, and other duplication.

23. However, the CARES Act may not permit a conversion into Sub-Chapter V for the Debtors.

24. The Debtors would therefore seek authority to dismiss these cases and refile under Sub-Chapter V if the Court determines the Court cannot convert this case to a case under Sub-Chapter V.

25. As for Peak, there is no bar to such a dismissal of the current bankruptcy case and a refiling under Sub-Chapter V.

26. However, with respect to Kutrubes, Bankruptcy Code § 362(c)(3) provides –

(3) if a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) --

   (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

   (B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may

then impose) after notice and a hearing completed before the expiration of the 30-
day period only if the party in interest demonstrates that the filing of the later case
is in good faith as to the creditors to be stayed;

27. The filing of the second Kutrubes case is to convert to Sub-Chapter V and not in bad faith as to any creditor with respect to the automatic stay.

28. Kutrubes understands that as a part of any refiling of his bankruptcy case, he will need to comply with Bankruptcy Code § 362(c)(3). However, as a part of any order by the Court allowing dismissal of the Kutrubes case to refile under Sub-Chapter V, it needs to be determined that the Court authorization is being pursued in good faith as to the stay by Kutrubes.

WHEREFORE, the Debtors respectfully requests that the Court enter an Order granting the relief requested herein and grant such further and additional relief that the Court may deem just and proper.

Dated: April 28, 2020                     Respectfully submitted,

                                          By: /s/ Aaron A. Garber
                                              Aaron A. Garber #36099
                                              **Wadsworth Garber Warner Conrardy, P.C.**
                                              2580 West Main Street, Suite 200
                                              Littleton, CO 80120
                                              Telephone: (303) 296-1999
                                              Telecopy: (303) 296-7600
                                              Email: agarber@wgwc-law.com